Filed 9/8/20  Kang v. City of Huntington Beach CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SUNNY KANG, | |
| Plaintiff and Appellant, | G056129 |
| v. | (Super. Ct. No. 30-2013-00626834) |
| CITY OF HUNTINGTON BEACH et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Walter P. Schwarm, Judge.  Affirmed.

Law Offices of Anne Dowden Saxton, Anne Dowden Saxton and Travis Poteat for Plaintiff and Appellant.

Michael E. Gates, City Attorney, Brian L. Williams, Trial Counsel, and Daniel S. Cha, Deputy City Attorney for Defendants and Respondents.

\*        \*        \*

This is a negligence case arising out of an automobile collision. The primary issue at trial was which party ran a red light. The jury returned a defense verdict. The trial court entered a defense judgment based on the verdict and denied the plaintiff's motion for judgment notwithstanding the verdict (JNOV).

The plaintiff asks us to reverse the judgment, asserting unimpeached and uncontradicted evidence compels a finding in her favor as a matter of law. She further contends the trial court erred in denying her JNOV motion because substantial evidence does not support the verdict. We disagree and we therefore affirm.

## FACTS

This case arises from a two-car collision that occurred early one morning in October 2011 at the intersection of Atlanta Avenue and Newland Street in Huntington Beach. Plaintiff Sunny Kang was travelling north on Newland Street, and defendant William Brownlee, an on-duty Huntington Beach police officer driving a marked police vehicle, was traveling east on Atlanta Avenue. Brownlee collided with Kang in the middle of the intersection. At trial both parties denied running a red light.

Kang sued Brownlee, the Huntington Beach Police Department,[1] and the City of Huntington Beach, asserting a single cause of action for motor vehicle negligence. The primary issue at trial was which driver entered the intersection on the green light.

1. *Kang's Testimony*

Kang testified the collision occurred when she was on her way home from dinner with friends and her boyfriend. Although she had also gone to the gym that morning, worked an eight-hour shift at her job, leased and picked up a new car that

---

[1] The Huntington Beach Police Department was later dismissed from the action. Brownlee and the City of Huntington Beach are hereafter referred to as Defendants.

evening, eaten dinner with friends, and been awake for 19 hours straight, she said she was not tired.

Kang was travelling northbound on Newland Street just prior to the collision. When she first approached the traffic signal at the intersection of Newland and Atlanta, her light was red. About 250 to 300 feet from the intersection, however, her light changed to green. Kang continuously looked at the green light as she entered the intersection.

When Kang was about two thirds of the way through the intersection, the front of Brownlee's vehicle collided with the left rear quarter panel of her vehicle, causing Kang's car to spin around. She never saw Brownlee's vehicle or headlights before the impact. Kang hit her head, felt disoriented, and may have blacked out. She called 911 to report what she thought was a hit-and-run, but then saw an officer (Brownlee) approach her vehicle. Brownlee told her, "I'm sorry. That was me."

According to Kang, shortly after Brownlee left the side of her vehicle, a tall man and a blonde woman approached her car. The woman said she had been driving next to Brownlee and saw him texting on his phone. The man, who sat down in Kang's car, told her he was driving behind Brownlee and saw him run the red light. Kang did not ask for or take down their identities. She did not tell anyone at the scene about these witnesses; she likewise did not mention the witnesses to the California Highway Patrol (CHP) officer who later interviewed her at the hospital.

2.      *Brownlee's Testimony*

Brownlee testified he has been employed as a Huntington Beach police officer since 2008. Before his law enforcement career, he served four years in the United States Marine Corps as a marksmanship instructor and combat engineer, and thus had experience estimating distances. As a police officer, he had also conducted hundreds of motor vehicle accident investigations and taught junior officers how to estimate distances

3

when investigating accidents. He testified without objection that he is an expert in estimating distances.

Brownlee was on duty when the collision occurred. Shortly before the collision, he received a radio call about a suspicious person at a church, accepted the assignment, and proceeded toward the church, heading eastbound on Atlanta Avenue. As he was approaching the intersection of Atlanta and Newland, he was traveling about 40 miles per hour in the left lane.

When he was about 100 feet[2] from the intersection, Brownlee saw he had a green light and then glanced over at the screen of his squad car's Mobile Data Terminal (MDT), a digital device mounted in the vehicle console, to confirm the church's address. He then returned his eyes to the road before entering the intersection. Brownlee, who is familiar with the timing of the phasing of traffic lights in Huntington Beach, testified there is "no way" his light could have phased to red by the time he entered the intersection. Instead, his light was either green, or possibly yellow, as confirmed by the fact the light was green when he was 100 feet from the intersection, he was traveling about 40 miles per hour, and it takes only 1.5 seconds to travel 100 feet at 40 miles per hour.[3]

As Brownlee entered the intersection, he saw Kang's vehicle in his peripheral vision and slammed on his brakes to avoid a collision. Despite his braking, the front of his vehicle hit the back left passenger side of Kang's vehicle.

---

[2]   Brownlee used a parked vehicle that was 100 feet from the intersection as a landmark reference to estimate the distance.

[3]   According to Defendants' expert, for the direction Brownlee was travelling, a yellow light would have lasted 4.3 seconds.

After the collision, Brownlee approached Kang's vehicle, opened her car door, and asked if she was okay. She told him she was sore, and he informed her medics were on the way. Brownlee did not see any potential witnesses at the scene.

3.      *Other Witnesses*

The jury also heard testimony from Kang's accident reconstruction expert. He opined Brownlee's light likely phased to red and Kang's returned to green, but he conceded that if Brownlee's light was green when Brownlee was 100 feet from the intersection, then it was Kang who ran a red light.

The jury also heard testimony from Defendants' traffic engineering expert, the CHP officer who investigated the collision,[4] and two of the responding police officers who were present at the accident scene. None of the officers identified any witnesses to the collision. The witnesses Kang said she encountered after the accident were never identified and did not testify.

4.      *The Verdict*

The jury found Brownlee was not negligent and returned a verdict in Defendants' favor, and the trial court entered a judgment on the verdict. Kang filed a JNOV motion, asserting the evidence at trial was insufficient as a matter of law to support the verdict. The court denied her motion, noting it had "independently evaluated and weighed the evidence, and finds that there is sufficient, credible evidence to support the verdict."

---

[4]      According to the CHP officer who investigated the collision, Brownlee said he did not look up from the MDT until he was halfway through the intersection. Brownlee testified he disagreed with the CHP officer's attribution of that statement to Brownlee but did not contact the officer to note his disagreement with the CHP report because he felt it would be "improper" to do so. He also pointed out that if he had not looked up until he was in the middle of the intersection, he would not have had time to brake.

Kang appealed from the judgment. Her notice of appeal did not identify the order denying her JNOV motion as part of her appeal.

## DISCUSSION

1. *The Judgment on the Jury Verdict*

Kang contends the "totality of the evidence . . . compelled a finding in [her] favor as a matter of law," and "the trial court committed prejudicial error by entering Judgment contrary to [her] uncontradicted, unimpeached, and sufficient evidence." We disagree.

We normally review a judgment entered on a jury verdict for substantial evidence, examining all factual matters in the light most favorable to the prevailing party, resolving all conflicts in support of the judgment, and then determining whether there is any substantial evidence, contradicted or uncontradicted, that supports the jury's conclusions. (*Kasparian v. County of Los Angeles* (1995) 38 Cal.App.4th 242, 259.) However, if "'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.'" (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.) Instead, "'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 733.)

Applying that standard here, we conclude the evidence does not compel a finding in Kang's favor as a matter of law. The crux of this case was which driver ran the red light, and the evidence on that issue was neither uncontradicted nor unimpeached. To

6

the contrary, there was competing evidence supporting both drivers' accounts of how the accident occurred.

Brownlee, who had years of military and professional experience estimating distances, testified he had a green light when he was about 100 feet from the intersection, he was travelling 40 miles per hour, and it only took him about 1.5 seconds to reach the intersection. Under Brownlee's version of events, even if the light phased from green to yellow when he was 100 feet from the intersection, he could not have had a red light by the time he entered the intersection because the yellow phase lasts over four seconds.

Kang asks us to ignore this evidence, asserting Brownlee's version of events is physically impossible. She contends Brownlee could not have been 100 feet from the intersection when he saw he had a green light, because he used a parked car as a reference point for his 100-foot estimate, and 100 feet from the intersection is a red no-parking zone. We are not persuaded. The car Brownlee saw might have been parked in the red zone illegally. Brownlee's version of events was not physically impossible.

Misunderstanding the relevant standard of review, Kang insists certain minute points of evidence were uncontradicted and unimpeached, thus warranting a reversal. For example, she contends the CHP officer's testimony that CHP officers receive more training on traffic collision investigations than Huntington Beach police officers was uncontradicted, and her expert witness's qualifications were not impeached. These arguments miss the point. In reviewing the judgment for substantial evidence, we must determine whether the evidence that Brownlee ran a red light was uncontradicted, unimpeached, and of such character and weight that we must find Brownlee negligent as a matter of law. Here, there was conflicting evidence on that issue. Because the evidence in support of Kang's case was not uncontradicted, the record does not compel a finding in her favor as a matter of law. We therefore affirm the judgment for Defendants.

7

2. *The Denial of the JNOV Motion*

Kang also asserts the trial court erred in denying her JNOV motion because substantial evidence did not support the verdict. Defendants contend Kang waived any challenge to the order denying her JNOV motion because she did not appeal that order. We agree with Defendants.

A notice of appeal must identify each judgment or order appealed. (Cal. Rules of Court, rule 8.100(a)(2).) A judgment is appealable under Code of Civil Procedure section 904.1, subdivision (a)(1), and an order denying a JNOV motion is separately appealable under Code of Civil Procedure section 904.1, subdivision (a)(4).

"If an order is appealable, an aggrieved party must file a timely notice of appeal from the order to obtain appellate review. [Citation.] A notice of appeal from a judgment alone does not encompass other judgments and separately appealable orders." (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239.) Thus, "'"[w]here several judgments and/or orders occurring close in time are separately appealable (e.g., judgment and order awarding attorney fees), each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal."'" (*Ibid.*) If the notice of appeal fails to identify the separately appealable order, we lack jurisdiction to consider the challenge to that order. (*Ibid.* [appeal from judgment did not perfect appeal of order granting motion for new trial].)

Kang's notice of appeal identified only the judgment; it did not identify the trial court's order denying her JNOV motion. Although "notice[s] of appeal must be liberally construed" (Cal. Rules of Court, rule 8.100(a)(2)), even a liberal construction of Kang's notice would not encompass the order denying her JNOV motion. Kang contends her "First Amended Appellant's Notice Designating Record on Appeal indicates that the trial court's incorrect denial of Kang's JNOV would be raised on appeal," but she fails to

8

provide a record citation or further explanation.  On this record, we conclude she waived her challenge to the JNOV order.

In any event, even if we had jurisdiction to consider this issue, we would not reverse the order on the JNOV motion.  Orders denying JNOV motions are reviewed for whether substantial evidence—contradicted or uncontradicted—supports the jury's conclusion.  (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770.)  "Under the substantial evidence test, the pertinent inquiry is whether substantial evidence supports the court's finding—not whether a contrary finding might have been made."  (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702.)  The evidence we discuss above is more than enough to support the jury's conclusion.  It is clearly substantial evidence.  A proper notice of appeal thus would not have changed the outcome of Kang's appeal.

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)



GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

9